IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FRANK L. RUSNAK, | : | |
| | : | Case No. 1:04CV313 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART |
| DOLLAR GENERAL CORP., INC., | : | AND DENYING IN PART |
| | : | MOTION FOR SUMMARY |
| Defendant. | : | JUDGMENT |

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 41.) Plaintiff Frank Rusnak filed a complaint asserting that his former employer, defendant Dollar General Corp., Inc. ("Dollar General"), is liable to him for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA") and Ohio Revised Code § 4112.2(N); wrongful discharge in violation of Ohio public policy; negligent misrepresentation; breach of covenant of good faith and fair dealing; equitable estoppel; and promissory estoppel. (Doc. 14.) Dollar General moved for summary judgment as to all of Rusnak's claims. (Doc. 41.) Subsequently, Rusnak voluntarily dismissed his claims of negligent misrepresentation, breach of covenant of good faith and fair dealing, and equitable estoppel. (Doc. 53 at 6, n.1.) Accordingly, the Court considers Defendant's motion as to the remaining claims. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. The Court grants the motion as it relates to Rusnak's violation of Ohio public policy claim but denies the motion as it relates to Rusnak's remaining claims.

1

**I.     BACKGROUND**

Dollar General is a retail organization that operates Dollar General stores in twenty-four states. (Rusnak dep. at 49.) Dollar General has a real estate department, the purpose of which is to identify and acquire new store locations and expand the business. (Smith dep. at 42.) At all relevant times, Dollar General's real estate department was overseen by a senior director, with two regional directors reporting to that position, and approximately twenty-five real estate representatives assigned to various territories throughout the United States reporting to the regional directors.[1] (Smith dep. at 31, 36, 45.) Plaintiff, Frank Rusnak, worked for Dollar General as a real estate representative from 1994 until his termination in November 2003.

Dollar General's real estate representatives either lease existing buildings or work with builders or developers to build new stores. (Smith dep. at 42, 44.) Dollar General evaluates its real estate representatives on an annual basis using a numerical scale that takes into account certain standards such as the number of new stores opened by October 31 of the given year[2] (Rusnak dep. at 111-12), average sales volume, rent, and expenses. (Rusnak dep. Ex. 12-15.) A real estate representative could only receive a bonus if he "met standards" with an overall numeric rating of at least 1.75. (Fox dep. at 235.)

---

[1] Paul Fox was Senior Director of Real Estate in the years leading to Rusnak's termination. (Smith dep. at 31; Fox dep. at 11-12.) Regional Real Estate Directors Gary Smith and Randy Black reported to Fox. (Smith dep. at 31.) All the real estate agents, including Rusnak, reported directly to Smith or Black. (Smith dep. at 31, 36.) Daniel Rasmussen replaced Black in September 2003. (Rasmussen dep. at 22, 57.)

[2] While Dollar General's fiscal year runs from February 1 to January 31, the deadline for store openings is October 31 to give the company November, December, and January "to get everything in place for the first quarter." (Black dep. at 225-26.)

With the exception of newly hired employees or representatives with unusual circumstances, Dollar General generally assigns real estate representatives a goal of opening 40 new stores per fiscal year. (Rusnak dep at 113-14; Rasmussen dep. at 81.) Dollar General gives a representative credit only for stores actually opened–it does not give credit for merely executing a lease. (Black dep. at 50; Fox dep. at 29; Smith dep. at 54.)

Frank Rusnak, born on November 2, 1945, had a nearly thirty-year career working in retail before he joined Dollar General. (Rusnak dep. at 16-20.) Rusnak began working for Dollar General on or about October 31, 1993, as a district manager covering a region from Dayton, Ohio to Lima, Ohio. (Am. Compl. ¶9, Rusnak Dep. at 8.) He was later promoted and, on or about September 26, 1994, Rusnak began working as a real estate representative covering Ohio. (Rusnak dep. at 25, 27-29, 32-33.) As a real estate representative, Rusnak was responsible for finding store locations and negotiating stores for Dollar General. (Rusnak dep. at 29-30.) In 1996, Dollar General promoted Rusnak to real estate director in training, and he received an increase in salary. (Rusnak dep. at 28, 37; Smith dep. at 29.) As a real estate director in training, Rusnak supervised three employees and performed the same duties as the regional directors. (Rusnak dep. at 30, 45.) However, in 2000, Dollar General ended the real estate director in training program. (Rusnak dep. at 29, 43, 45; Smith dep. at 30.) Regional Director Black offered to retain Rusnak as a real estate representative, and Rusnak accepted. (Rusnak dep. at 43-33.) Rusnak returned to the position of real estate representative for Ohio, a state in which Black acknowledged work could be tough. (Black dep. at 158.) Black gave

3

Rusnak a reduced goal[3] for store openings that year because Rusnak did not start the position until February and the evaluation period ended in October. (Rusnak dep. at 110-11.)

According to Dollar General, after Rusnak resumed working as a real estate representative in 2000, he did not perform to a level commensurate with his experience. (Fox dep. at 58.) Dollar General claims that Rusnak failed to meet his store-opening goal in 2000.[4] (Black dep. at 48-49.) However, Black gave Rusnak a performance score of 1.8, indicating that Rusnak met his standards that year. (Rusnak dep. Ex. 12.)

The following year, 2001, Rusnak failed to meet his goal of opening forty stores and received a "below standard" performance score of 1.6. (Black dep. at 241; Rusnak Ex. 13.) The performance review noted that Rusnak "should be a top producer with his years of experience and training." (Rusnak dep. Ex. 13.) According to Dollar General, Black then told Rusnak that because he had failed to make his goals two years in a row, Rusnak had to make his monthly and quarterly goals moving forward. (Black dep. at 133.) Rusnak felt that the rating was unfair because, at Dollar General's request, he opened five stores in January–outside the February to October evaluation period. (Rusnak dep. at 134.)

In 2002, Rusnak again failed to meet his goal of opening forty stores and received a "below standard" performance score of 1.53. (Rusnak dep. 112-13; Rusnak dep. Ex. 14.) Black indicated on Rusnak's performance evaluation that Rusnak "must show he has the ability to meet

---

[3] The record is unclear as to Rusnak's store-opening goal for 2000. Rusnak testified at his deposition that Black gave him a goal of opening sixteen stores. (Rusnak dep. at 110.) However, Black indicated on Rusnak's performance review that he had given Rusnak a goal of opening twenty-five stores. (Rusnak Ex. 12.) Rusnak opened twenty-one stores during the 2000 evaluation period. (*Id.*)

[4] See supra footnote 3.

his monthly goals within reason and meet his quarterly goals without exception.... He must improve his productivity." (Rusnak dep. Ex. 14.) On July 10, 2002, Black presented Rusnak with a progressive counseling record addressing his performance. (Rusnak dep. at 155; Black dep. at 211; Rusnak Ex. 17.) Black disciplined Rusnak for failing to meet his goals for the first two quarters of 2002 and identified four corrective actions for Rusnak to complete by certain dates. (Rusnak dep. at 155-58; Black dep. at 213-15; Rusnak Ex. 17.) Rusnak failed to fulfill two of the four corrective actions: he did not attain the store count for that year, and he did not make his quarterly goals. (*Id.*; Rusnak dep. Ex. 18.)

Four months later, on November 14, 2002, Black presented Rusnak with a final progressive counseling. (Rusnak dep. at 159-60; Black dep. at 218-19; Rusnak Ex. 18.) Black disciplined Rusnak for not making his monthly goals and for again missing his annual goal of opening forty stores by October 31, 2002. (Rusnak Ex. 18.) Rusnak admitted that he did not make all monthly goals and did not meet his annual goal but said that he believed the stores that he opened after October 31 should have counted toward his goal. (Rusnak dep. at 160; Rusnak Ex. 18.) Black identified two corrective actions for Rusnak: make all quarterly goals in 2003 and not miss any monthly goals by more than one store opening. (Rusnak Ex. 18.) The progressive counseling record noted that if Rusnak did not satisfactorily accomplish the action plan, Dollar General would terminate him. (*Id.*)

Dollar General then undertook to assist Rusnak in meeting his store opening goals, including bringing in two other real estate representatives to help Rusnak identify new locations to develop and giving Rusnak additional territory in Michigan. (Black dep. at 143-44; Rusnak dep. at 246-47.) However, Rusnak did not meet his 2003 first and second quarter goals.

(Rusnak dep. at 149-51; Ex. 15.) Then, according to Rusnak, in early October, his supervisor Rasmussen asked him to move several store openings from fiscal year 2003 to fiscal year 2004. (Rusnak dep. at 181, 84.) Rasmussen allegedly told Rusnak that delaying the store openings would not cost Rusnak his raise and that Rusnak would keep his job, despite not meeting his 2003 store-opening goal. (Rusnak dep. at 184-85.) Rasmussen denies ever telling Rusnak to delay the store openings. (Rasmussen dep. at 166-69.) Rusnak delayed the store openings and did not meet his goal of opening forty stores by October 31, 2003. (Rusnak dep. at 113.)

On November 12, 2003, Dollar General presented Rusnak with a ten-year service award. (Rusnak dep. at 170.) The following day, Rasmussen terminated Rusnak for failing to meet his goal. (Rusnak dep. at 170-72.) Rusnak was 58 years old. Following his termination, Rusnak's territory was covered by the following individuals: Daniel Rasmussen (age 54), Larry Lynn (age 56), Terry Bailey (age 62), Gregory Dennis (age 37), and Vince Boldin (age 58). (Kelly aff. ¶ 3.)

Rusnak (born in 1945) claims that Dollar General treated younger real estate representatives more favorably than it treated him. He points to the fact that when Rasmussen surpassed his personal store opening goal, he would occasionally give credit for the excess stores to "new reps." (Rasmussen dep. at 305.)[5] He also discusses Dollar General's so-called "favorable" treatment of real estate representatives Turner (born in 1957), Cardwell (born in 1955), Kopp (born in 1960), and Grooms (born in 1965). (Doc. 53 at 12-14.)

---

[5] Rasmussen did not say that he gave credit to "younger" employees, but to "new" representatives. At some point in time, Rasmussen gave such credit to most of the representatives he was responsible for mentoring. (Rasmussen dep. at 307.)

6

In 2002, when Turner made his store-opening goal only one out of three quarters, Black gave Turner a score of 1.5 in the evaluation category "Opened by Quarter Goals." (Doc. 53, Ex. A at 01408.) That same year, when Rusnak similarly made his goal only one out of three quarters, Black gave Rusnak a lower rating of 1 in the category "Opened by Quarter Goals."[6] (Rusnak dep. Ex. 14.) In 2003, Smith gave Turner an overall performance score of 1.75, although this score was higher than he would have received under Dollar General's standard scoring scale. (Doc. 53, Ex. A. at 1425-26.) Additionally, Smith extended Turner's 2003 store-opening deadline to the end of January 2004. (*Id*. at 1425.) Rusnak received no such extension.

Rusnak claims that representatives Cardwell, Kopp, and Grooms all had subpar performance and that Dollar General did not terminate those employees. Dollar General hired Cardwell in August 1999, and Cardwell failed to meet his goal in 1999, 2000, and 2001. He resigned from the company in 2002. (Doc. 53, Ex. B.) Dollar General hired Kopp in November 2002. Kopp showed poor performance in 2003 and 2004, and he resigned in February 2005. (Doc. 53, Ex. B.) Dollar General hired Grooms as a real estate representative in March 2001. He did not meet his quarterly goals, and he resigned in July 2002. (Doc. 53, Ex. D.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn

---

[6] Confusingly, Black stated in the rater comments section of Rusnak's evaluation that Rusnak "failed to meet *any* quarter goals and missed his annual goal." (Rusnak dep. Ex. 14.) (emphasis added.)

therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." *Id.* at 252.

### III. ANALYSIS

#### A. Plaintiff's Statutory and Common Law Age Discrimination Claims

Plaintiff alleges age discrimination and claims that his termination violated the ADEA, Ohio Revised Code §4112.2(N), and Ohio public policy. Dollar General asserts that it terminated Rusnak because he failed to meet specific performance standards. (Doc. 43 at 11.) Rusnak counters that Dollar General retained and even assisted significantly younger employees who had worse performance deficiencies. (Doc. 53 at 1-2.) Because Ohio Revised Code §4112.2 parallels the federal discrimination statues, the Court analyzes Rusnak's age discrimination claim under the ADEA. *See Whitt v. Lockheed Martin Utility Serv., Inc.*, 209

F.Supp.2d 787, 792 (S.D. Ohio 2002); *Plumbers and Steam Fitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981).

### 1. Statutory Claims

The ADEA prohibits an employer from refusing to "hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a claim under the ADEA, a plaintiff-employee must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision"--that is, the employee's protected trait must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Such a claim may be proven through direct evidence of the employer's discriminatory motive, or through the indirect, burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[7] Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Rusnak presents no direct evidence that Dollar General unlawfully discriminated against him on the basis of his age, thus he must rely on the indirect method.

Under the *McDonnell Douglas* analysis, a plaintiff must first make a prima facie showing on the age discrimination claim. *Rowan*, 360 F.3d at 547. If the plaintiff makes such a showing,

---

[7] The Supreme Court has assumed that the *McDonnell Douglas* burden-shifting framework applies to age-discrimination cases. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996).

9

the burden shifts to the employer to show a nondiscriminatory reason for its employment decision. *Id*. (*citing LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379 (6th Cir.1993)). If the employer satisfies this burden of production, then the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was not its true reason but was, in fact, a pretext for decisions actually motivated by unlawful bias against age. *Id.*

To establish a prima facie case of age discrimination in relation to a termination of employment, a plaintiff must show (1) that he was a member of a protected age class; (2) that he was discharged; (3) that he was qualified for the position he held; and (4) that he was replaced by a younger worker or was treated differently than similarly situated younger employees. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (*citing Cox v. DOT*, 53 F.3d 146, 150 (6th Cir.1995)); *Cichewicz v. UNOVA Indus. Automotive Systems, Inc.,* 2004 WL 291178, *2 (6th Cir. Feb. 12, 2004).

Dollar General concedes that Rusnak can meet the first and second elements of the prima facie case: he is over age 40 and therefore a member of the protected class, and he suffered an adverse employment action when his employment was terminated. (Doc. 43 at 15.) However, it argues that Rusnak cannot make a prima facie showing of the third and fourth prongs of the test.

Regarding the third prong of the prima facie case, whether Rusnak was qualified for his position, Dollar General states that Rusnak was not qualified because he failed to meet his annual goals for four years and failed to improve his performance even after being counseled and disciplined by three different supervisors. (Doc. 43 at 15.) Rusnak responds that Dollar General admitted that he was "objectively qualified" for his position and that Dollar General cannot rely

on its asserted legitimate basis for Rusnak's termination, poor performance, as evidence that Rusnak was not qualified. (Doc. 53 at 17-18.)

In determining whether a plaintiff alleging discrimination is qualified for the position from which he has been terminated, the court must analyze the plaintiff's qualifications independent of the defendant's non-discriminatory reason for termination. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574-75 (6th Cir. 2003); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). In *Cline*, a case in which the plaintiff claimed she had been terminated in violation of Title VII, the Sixth Circuit concluded that the district court erred when it used the defendant's "nondiscriminatory reason" for plaintiff's termination as a predicate for finding that plaintiff failed to make a prima facie case. *Cline*, 206 F.3d at 660. Thus, "at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Id.* at 661. Accordingly, the Court must look only at the evidence of Rusnak's employment prior to the events that spurred his termination. *Id.* at 662 (discussing *Hicks v. St. Mary's Honor Ctr.*, 756 F.Supp. 1244 (E.D. Mo. 1991).

Rasmussen reported to Real Estate Supervisor Fox that Rusnak had the ability to perform his job satisfactorily. (Rasmussen dep. at 69-70.) Dollar General also admitted that Rusnak was "objectively qualified" in its Answers to Interrogatories. (Doc. 53, Ex. E at 3.) These admissions by Dollar General, combined with Rusnak's thirty-year retail experience and the fact that Dollar General promoted him to Real Estate Director in Training, are sufficient bases on which a jury might conclude that Rusnak was qualified for his position prior to his termination.

To satisfy the fourth and final prong of the prima facie case, Rusnak must show that he was replaced by a younger person or treated differently than similarly situated younger employees. An employee "is not 'replaced' when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees." *Grosjean*, 349 F.3d at 336 (quoting *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). In this case, Rusnak's territory was reassigned to five existing employees: Dan Rasmussen (born in 1951), Larry Lynn (born in 1950), Terry Bailey (born in 1954), Vince Boldin (born in 1947) and Gregory Dennis (born in 1968). Thus, he was not technically "replaced." Because Rusnak was not "replaced" by another employee, he must show that he was treated differently than a similarly situated younger person to satisfy the fourth element of the prima facie case.

To be considered "similarly situated," the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). For example, in cases involving disciplinary action, the plaintiff and the other employee generally must have dealt with the same supervisor, been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct. *Id.*

Rusnak has presented evidence that he and Will Turner, who is twelve years younger than Rusnak, both were real estate representatives who were judged by the same pool of supervisors (Black, Smith, and Rasmussen) on the same objective criteria. The evidence further demonstrates that neither Rusnak nor Turner met their store-opening goals in 2002 and 2003.

However, in 2002, Black gave Turner higher marks on his performance evaluation than he gave Rusnak.  Additionally, in 2003, Smith extended the deadline by which Turner could open his stores.  Rusnak did not receive a similar extension.  Rusnak also presented evidence that three other representatives with poor performance history, Cardwell, Kopp, and Grooms–all at least ten years younger than Rusnak–were not terminated but were allowed to resign.  This evidence, taken together with all permissible inferences, could lead a reasonable jury to conclude that Dollar General treated Rusnak differently than younger, similarly situated real estate representatives.  Thus, Rusnak has satisfied the elements of a prima facie case of age discrimination.

> The burden thus shifts to Dollar General to "articulate some legitimate, nondiscriminatory reason" for Rusnak's discharge.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  Dollar General has satisfied this burden by stating that it terminated Rusnak for failing to meet his annual goal four years in a row, failing to meet his quarterly and monthly goals, and failing to comply with corrective action identified in written disciplines.  (Doc. 43 at 18-20.)  The burden thus returns to Rusnak to prove by a preponderance of the evidence "that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253(1981).  He may refute Dollar General's stated reason "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Rusnak has not shown that Dollar General's articulated reason for terminating him has no basis in fact.  To the contrary, the performance evaluations demonstrate that Rusnak failed to

13

meet the standards that Dollar General established for him. Neither has Rusnak put forth any evidence that his poor performance did not actually motivate Dollar General to terminate him. While Rusnak attempts to portray deposition testimony of Rasmussen and Fox as setting forth contradictory bases for Rusnak's termination, the testimony and Rusnak's written performance evaluations are consistent: they warned Rusnak that he would be terminated if he did not start meeting his goals, he did not meet his goals, and together Rasmussen and Fox were involved in the decision to terminate him.

Rusnak's burden of demonstrating that Dollar General's stated reason for terminating him was, in fact, pretext for discrimination therefore hinges upon his ability to show that Dollar General's stated reasons were insufficient to motivate his termination. On this point, the Court finds that Rusnak has demonstrated a genuine issue of material fact such that summary judgment is improper. Rusnak has presented as evidence information from the personnel files of other real estate representatives that shows that several representatives failed to meet their goals. Testimony from Rasmussen and Black demonstrate that Dollar General sometimes extended the deadlines by which representatives could open stores and still receive credit. While it appears from the record that Rusnak indeed failed to meet Dollar General's expectations in 2001 and 2002, he might have met the 2003 goal if his deadline had been extended as it was for at least one other representative. Further, the record shows that other real estate representatives with multi-year performance deficiencies were not terminated but permitted to resign. Reviewed in a light most favorable to the non-moving party, the Court concludes that Rusnak has met his burden of demonstrating a genuine issue of material fact as to whether Dollar General's stated reason for terminating him was, in fact, sufficient to motivate its decision.

### 2. Public Policy

Rusnak next argues that Dollar General discriminated against him on the basis of his age, thereby violating Ohio public policy. (Doc. 1 ¶¶ 25-29.) To succeed on a claim of wrongful discharge in violation of public policy under Ohio law, a plaintiff must show that (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law;" (2) that "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy;" (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy;" and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal." *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 311 (6th Cir. 2000) (citing *Painter v. Graley*, 70 Ohio St.3d 377, n. 8, 639 N.E.2d 51 (1994)).

Both the ADEA and Ohio Revised Code § 4112.02(N) are statutes evidencing a clear public policy against discharging an employee on the basis of the employee's age. Thus, Rusnak has satisfied the first prong of the analysis. However, under the law of the Sixth Circuit and this District in particular, Rusnak has not proved the second prong of the analysis, that Dollar General's dismissing him under the circumstances jeopardized the public policy against age discrimination. Under Ohio law, to prove the second prong of the public policy inquiry, a plaintiff must show that there is no other recourse or adequate remedy available to him:

> An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim.... Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis.... Simply put, there is no need to recognize a

15

>common-law action for wrongful discharge if there already exists a
>statutory remedy that adequately protects society's interests.

*Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244, 773 N.E.2d 526 (2002) (internal citations omitted) (holding that a violation of the FMLA does not constitute a violation of Ohio public policy because the compensatory damages and equitable remedies afforded by the FMLA provide a remedy adequate to protect the public policy embodied by the Act). The Sixth Circuit interpreted *Wiles* as barring a public policy claim for wrongful discharge if there is any other recourse available. *Carrasco v. NOAMTC Inc.*, 124 Fed. Appx. 297, 304, 2004 WL 2756838 (6th Cir. 2004) (unreported) (holding that "[b]ecause [plaintiff] has a remedy available to him under both Title VII and [Ohio Revised Code Section 4112], we find that he cannot have that same claim under Ohio common law.")

The Ohio Supreme Court has not addressed whether Chapter 4112 provides a sufficient remedy such that it forecloses a public policy claim based on age discrimination. However, numerous courts in this Circuit have relied on *Carrasco* and *Wiles* to dismiss public policy claims in age discrimination suits. *See Feichtner v. Roman Catholic Archdiocese of Cincinnati*, No. 1:05-CV-00398, 2006 WL 571962 (S.D. Ohio March 7, 2006) (Spiegel, S.J.); *Williams v. Allstate Ins. Co.*, No. 5:04-CV-2435, 2005 WL 1315756 (N.D.Ohio Jun.2, 2005) (Nugent, J.); *Curry v. Consolidated Coal Co.*, No. C203-CV-1053, 2005 WL 1159410 (S.D.Ohio May 17, 2005) (Frost, J.).

Additionally, courts that have not specifically cited *Carrasco* have still found that the type of public policy claim at issue here is foreclosed by the remedies in Chapter 4112.[8] *See*

---

[8] Chapter 4112 actually offers *four* alternative means of promoting the public policy against age discrimination: R.C. §§ 4112.02(N), 4112.08, 4112.14, and 4112.99. An Ohio appellate court recently noted that a distinction may exist between age discrimination cases

*Gray v. Allstate Insurance Co.*, No. 1:03-CV-910, 2005 WL 2372845, (S.D.Ohio Sept. 26, 2005) (Beckwith, C.J.); *Thaman v. OhioHealth Corp.*, No. 2:03-CV-210, 2005 WL 1532550, *16 (S.D.Ohio June 29, 2005). That Rusnak elected to pursue his statutory claim under Ohio Revised Code § 4112.02(N) does not alter this result: the remedy available under section 4112.02(N) ("any legal or equitable relief that will effectuate the individual's rights") is just as broad as that offered under section 4112.99 ("damages, injunctive relief, or any other appropriate relief"). Furthermore, it is clear from *Carrusco* that a public policy claim is barred if there are adequate remedies for the plaintiff under *other statutes*, not just the statute under which the plaintiff elected to proceed. *Accord Curry v. Consolidated Coal Co.*, 2005 WL 1159410 at *4 (granting summary judgment to the defendant on plaintiff's breach of public policy claim where plaintiff brought a claim under the ADEA but not Chapter 4112, concluding that the statutory remedies available to plaintiff under Chapter 4112 provided remedies that adequately protect society's interest in preventing age discrimination).

     The Court is bound by the Sixth Circuit's holding in *Carrasco* and agrees with other courts in this Circuit that the broad scope of remedies available under Ohio Revised Code Chapter 4112 is sufficient to vindicate Ohio's public policy against age discrimination and thus forecloses a separate cause of action for violation of public policy.

---

brought under R.C. § 4112.02(N) and 4112.99 (which provide a right of jury trial) and those brought under R.C. § 4112.14 (which does not include such a right). *Gessner v. City of Union*, 159 Ohio App.3d 43, 49, 823 N.E.2d 1 (2d Dist. 2004). However, there is no distinction between the remedies offered under R.C. §§ 4112.02(N) and 4112.99.

### B. Plaintiff's Tort Claim

Rusnak asserts a claim of promissory estoppel against Dollar General claiming that his supervisor, Rasmussen, asked him to delay the opening of several stores until 2004 and assured him that delaying the openings would not adversely affect his employment. (Doc. 14 ¶ 13.) Rusnak claims that he relied on Rasmussen's assurances and delayed the store openings. Then, Rasmussen terminated Rusnak for failing to meet his goals.[9] (Rusnak dep. at 170-72.) Dollar General counters that Rasmussen never ever asked Rusnak to delay the opening of the stores in question (Rasmussen dep. at 166-69), and that even if he did, Rusnak cannot establish that he suffered a detriment of any kind as a result of the actions taken by him in reliance on the alleged representation by Rasmussen. (Doc. 43 at 32.) Dollar General points to evidence in the record that under no circumstances could the stores in question have opened before October 31, the deadline by which Rusnak was to meet his store-opening goal. (*Id.* at 33.)

It is well settled that Ohio adheres to the employment-at-will doctrine. *Phung v. Waste Management, Inc.*, 23 Ohio St.3d 100, 491 N.E.2d 1114 (1986). However, the doctrine of promissory estoppel will be binding on an employment-at-will relationship where an employer makes a promise, and should reasonably expect that the promise will induce action or forbearance on the part of the employee. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). "The test in such cases is whether the employer should have reasonably

---

[9] The Court notes that Rusnak's assertion in his opposition memorandum that Rasmussen told Rusnak he was being terminated for failure to meet "his 2003 goals" misstates the deposition testimony. (Doc. 53 at 9.) Rusnak's own testimony is that Rasmussen terminated him "because [he] did not meet [his] goals." (Rusnak dep. at 172). Rasmussen testified he terminated Rusnak because of his previously documented performance (Rasmussen dep. at 206). The testimony does not indicate that Rusnak's failure to meet the 2003 goal was the sole basis for his termination.

expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Id*. at 105.

The Court cannot resolve this issue on summary judgment. First, there is a dispute over whether Rasmussen told Rusnak to delay the store openings. The Court cannot resolve this fact issue because credibility determinations and the weighing of the evidence are jury functions, not those of a judge. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). At this stage of the proceedings, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.*

Second, if Rusnak did delay the store openings in reliance on Rasmussen's alleged promise, there is a fact issue as to whether that action was detrimental to Rusnak. Dollar General has presented undisputed evidence that the six stores Rusnak delayed opening could not have opened prior to the October 31 store-opening deadline because the store developer, Cocca, was not ready to turn the stores over to Dollar General until after that date. (Cocca dep. at 154-57.) In fact, Cocca requested permission to turn the six stores over to Dollar General on November 16, 2003. (Cocca dep. at 156.) Thus, Dollar General's argument that Rusnak could not have met his goal of opening 40 stores by October 31, 2003 is well taken.

However, the record also shows that Dollar General sometimes extended the deadline by which real estate representatives had to open stores and have those openings credited to the fiscal year. Rasmussen testified that Dollar General sometimes gave representatives until November 15 to meet their annual store-opening goal. (Rasmussen dep. at 93-94 ("Dollar General as I've known has been pretty gracious in the past if [real estate representatives] didn't meet those quarterly goals, they gave them October....Sometimes it would be the 15th of November,

sometimes it would be the 1st of November.).)  Given this apparent flexibility on the part of Dollar General, and taking as true Rusnak's testimony that Rasmussen told him "as far as [Rasmussen was] concerned I [Rusnak] made the goal" (Rusnak dep. at 185), a jury could conclude that Rusnak relied on Rasmussen's alleged promise to his detriment.  The reasonableness of any such reliance is a fact question for the jury.  *See, e.g., Kelly v. Georgia-Pacific Corp.*  46 Ohio St.3d 134, 140, 545 N.E.2d 1244 (1989).

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. (Doc. 41).  Summary judgment is granted in favor of Defendant on Plaintiff's violation of Ohio public policy claim but denied as to the remainder of Plaintiff's claims.

IT IS SO ORDERED.

\_\_\_s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge